UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

WILLIAM KIRKLAND  
1335 Compton Road # 6  
Cincinnati, Ohio 45231  
Plaintiff,

Case No.   C-1-02-364  
(Judge)     Weber  
Magistrate   Novotny, M.J.

v.

CHARLIE LUKEN, et al.,  
Defendants.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S  
MOTION FOR SUMMARY JUDGMENT AND**

**EXTENSION OF TIME TO SUPPLEMENT THE RECORD**

**AND SECOND REQUEST TO UNSEAL TRANSCRIPTS**

Now Comes the Plaintiff, William Kirkland, pro se, pursuant to Fed. R. Civ.P 56 Respectfully submitting Plaintiff's Opposition to Defendant's Motion For Summary Judgment. (*See* Doc 18).

**OPPOSITION MEMORANDUM IN SUPPORT**

**BACKGROUND**

On May 17, 2000 Sgt. Andre Smith, a 13 year veteran of the Cincinnati Police department who at that time supervised officers on first shift at District 2, filed a formal complaint with former Safety Director Kent Ryan alleging that Police Chief Thomas Streicher in an inappropriate manner referred to him as a "nigger". Although Mr. Ryan determined that the facts of the incident as described by Sgt. Smith and acknowledged by

Chief Streicher were not in dispute, Chief Streicher was not disciplined. (Chief Streicher allegedly received documented counseling).

On May 20, 2000 Chief Streicher met with Sgt. Smith and apologized.
On May 30, 2000 Chief Streicher and Sgt. Smith met in the office of Mr. Ryan.

Despite protest by Scotty Johnson, President of the Sentinels Police Association, (the African American police officers organization), and a new two month old city policy which prohibited city employees from making racial, sexist, or religious jokes and comments, on Friday May 26, 2000 former City manager John Shirey said "the new city's policy does not apply to the Chief's comment", Former City Manager John Shirey disregarded the new policy's controlling language that violators like Chief Streicher "shall be subject to disciplinary actions".

On Wednesday June 7, 2000 Sgt. Smith appeared at City hall before members of Cincinnati City Council to continue to express his displeasure over the Chief's use and the Administrations mishandling of the incident. Mayor Luken responded to say he continues "to believe in the goodness of Chief Streicher and that any vilification of the Chief ... must stop."

**I. FACTS**

On May 23, 2001, Plaintiff, William Kirkland along with several known and unknown citizens attended a regular weekly scheduled, public session of the Cincinnati City Council Meeting. *(Plaintiff's Complaint paragraph 9).*

One citizen, unknown to plaintiff at the time was Robert J. Meyers, a White male, who addressed council during the non-agenda items portion of the City Council Meeting. *(Plaintiff's Complaint Paragraph 10).*

During Mr. Robert J. Meyers address he left the podium with out the prior approval of the Mayor who was chairing the meeting. (*Plaintiff's Complaint Paragraph 11*).

Mr. Robert J. Meyers approached the Mayor and each member of Council to present them with documents while he continued speaking. *(Plaintiff's Complaint Paragraph 12).*

When citizens raised verbal objections to the Mayor allowing the "white" citizen to approach without permission Mayor Charlie Luken apologized to Mr. Robert J. Meyers about the citizens outburst and told Mr. Robert J. Meyers to continue. (*Complaint Paragraph 13*).

Mr. Robert J. Meyers finished passing out documents and returned to the podium where he went over the allotted two-minute time limit. *Complaint Paragraph 14).*

Mayor Charlie Luken warned Mr. Robert J. Meyers that he had exceeded the two minute time limit, however Mr. Meyers continued to speak. *Complaint Paragraph 15).*

Mr. Robert J. Meyers continued to speak without being silenced, removed from council chambers, or being unlawfully arrested. (*Complaint Paragraph 16*).

On the afternoon in question Plaintiff, William Kirkland, complied with the customary procedure to be recognized to speak on a non-agenda item. *(Complaint Paragraph 17).*

Plaintiff, William Kirkland was called to the podium by Mayor Charlie

Luken. *(Complaint Paragraph 18)*.

As plaintiff, William Kirkland began to speak, plaintiff referred to the city of Cincinnati as "nigganati". *(Complaint Paragraph 19)*.

Plaintiff, William Kirkland was immediately admonished by the Mayor Charlie Luken . *(Complaint Paragraph 20)*.

Mayor Charlie Luken ordered Sgt. Emmett Gladden to "remove Mr. Kirkland". *(Complaint Paragraph 21)*.

Sgt. Emmett Gladden approached plaintiff, William Kirkland at the podium and turned off the microphone.*(Complaint Paragraph 22)*.

Plaintiff, William Kirkland stepped away from the podium and walked toward the Mayor's chair which was on top of a raised platform, inaccessible to the public. *(Complaint Paragraph 23)*.

Plaintiff, William Kirkland was speaking without the benefit of a microphone and speaking loudly. *(Complaint Paragraph 24)*.

Mayor Charlie Luken continued to order Sgt. Gladden to "remove Mr. Kirkland". *(Complaint Paragraph 25)*.

Prior to the exhaustion of Plaintiff, William Kirkland's two minute time limit Sgt. Gladden executed Mayor Charlie Lukens's command to "remove Mr. Kirkland". *(Complaint Paragraph 26)*.

Plaintiff ,William Kirkland having been silenced by Mayor Charlie Luken, removed from the Council Chambers by Sgt. Emmett Gladden, was ultimately arrested by Police officer Mark Sneed. *(Complaint Paragraph 27)*.

All of these actions took place with the approval and under the watchful eye of City Prosecutor Terry Cosgrove, violating plaintiff, William Kirkland's Constitutional and Civil Rights. *(Complaint Paragraph 28).*

On June 27, 2001 Plaintiff, William Kirkland was speaking before a regular scheduled public session of the Cincinnati City Council Meeting when plaintiff William Kirkland stated to Councilwoman Alicia Reece "if you're not a clown stop acting like one". *(Complaint Paragraph 29).*

Plaintiff, William Kirkland further instructed Councilwoman Alicia Reece to "stop pandering to white people". *(Compliant Paragraph 30).*

. At that time Councilwoman Alicia Reece seduced Mayor Charlie Luken to join Councilwoman Alicia Reece in silencing plaintiff, William Kirkland, violating plaintiff's William Kirkland's Constitutional and Civil Rights. *(Complaint Paragraph 31).*

## II. STANDARD OF REVIEW

According to Fed. R. Civ. P. 56(c) summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *See Matsuhita Elec. Indus. Co. v. Zenith Radio Corp., 474 U.S. 574, 587 (1986).* The judge is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson v.*

*Liberty Lobby, Inc.* 477 U.S. 242, 249 (1986). A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff."*Id. at 252*. Under the foregoing precepts regarding defendant's Motion for Summary Judgment as the parties have not stipulated to any facts, at the outset there are material, factual disputes, and genuine issues this honorable Court must resolve, accordingly defendant's motion for summary judgment must be denied.

## ARGUMENT

### III. MAYOR LUKEN AND VICE MAYOR REECE ARE NOT ENTITLED TO LEGISLATIVE IMMUNITY.

#### A. Legislative Immunity

Defendants' contend that Mayor Luken, and Vice Mayor Alicia Reece are entitled to legislative immunity against plaintiff's alleged 42 U.S. C. Section 1983 violations and other state law claims. Plaintiff agrees the U.S. Supreme Court has well established legislators are granted "absolute immunity for statements and or actions pursuant to the discharge of their **legislative duties**. *Tenney v. Brandhove,* 341 U.S. 367, (1951) (emphasis mine). The U.S. Supreme Court extended this wisdom to state and local legislatures in *Bogan v. Roderick* 523 U.S. 44, (1998). The Sixth Circuit acknowledged that absolute legislative immunity enunciated in *Tenney* and *Bogan* is rooted in the United States Constitution. *See Canary v. Osborn,* 211 F.3d 324,328 cert. Denied, 531 U.S. 927 (6th Cir. 2000) (Citinig *Tenney)*. The Court has defined legislativies activities in terms of the "nature of the act" and not the intent of the official performing it. *Id. at 54*. With direct respect to Defendants Mayor Luken, and Vice Mayor Alicia Reece's disciplining plaintiff by admonishing and silencing him on May 23, 2001, and June 27,

2001, other courts confirm that monitoring or discipling the conduct of speakers at public hearings, in many cases, constitutes ***an administrative—not a legislative—act***, even if performed by legislators at regulary scheduled public meetings. *See Kamplain, 159 F. 3d 1248* (Tenth Circuit rejected legislative immunity defense and affirmed the denial of a Rule 12 (b)(6) motion to dismiss claims of First Amendment deprivations brought pursuant to 42 U.S. C. section 1983 against county board of commissioners who voted to ban plaintiff from all future commission meetings and subsequently prohibited plaintiff from participating in or speaking before commission meetings); Hansen v. Bennett, 948 F. 2d 397, 403 (7th Cir. 1991), cert. Denied, 504 U.S. 910 (1992) quoting United States v. Brewster, 408 U.S. 501, 528 (1972) (Seventh Circuit rules mayor not entitled to legislative immunity defense when he acted to remove a disruptive person from city council.

Nothing about the Mayor's or Vice Mayor's statements or actions on May 23, 2001 or June 27, 2001 pertained to their legislative duties. On both occasions their actions were in direct opposition to the content of my speech and a violation of that free speech. As defendant concedes in his motion for summary judgment "On the day in question, Plaintiff was speaking on a non-agenda item about a matter of public and police policy procedure. He was addressing the City of Cincinnati Council concerning an issue that had been hotly debated several times during council hearings concerning the discipline of the Chief of Police for using the word "nigger"… In fact, the very purpose Plaintiff decided to speak during the non-agenda portion of the council meeting was to mark the anniversary of the day Chief Streicher used the word… His comments were directed to

keep the issue alive...." (See *Defendant's Motion For Summary Judgment at page 5, the 2nd paragraph, (Doc. 18))*.

Clearly this honorable court can ascertain from the record that there is nothing about defendants' conduct at issue that bears the "hallmark of traditional legislation" i.e. does it reflect "a discretionary, policy making decision" that has "prospective implications" *Bogan, 523 U.S. at 55-56; See also Canary, 211 F3d at 330-331*. To be sure, the only legislative action that is remotely relevant to the issue had already been taken a year prior to plaintiff's appearance at council. That is when council by legislative action enacted a new city policy prohibiting city employees from making racial, sexist, or religious jokes and comments. *(See Affidavit of William Kirkland; See also Plaintiff's Combined Response To Show Cause Order And Objection To Defendant's Motion To Dismiss (Doc. 8) at page 2 paragraph 1(reading in pertinent parts "... a new two month old city police which prohibits city employees from making racial, sexist, or religious jokes, and comments"....*

Additionally under the authority of the Charter of the City of Cincinnati, city Council had established, and adopted the *RULES OF COUNCIL which* buttress plaintiff's position. Rule 1.4 Rule regarding *courtesy and decorum* states " Council recognizes that citizens coming before council may not always agree with the views of some or all of the members of council **nonetheless those views should be heard respectfully without reproach or admonition. Decorum and civility shall be observed at all times by members of council even though it may not be reciprocated.** *(emphasis mine)*. For the foregoing reasons defendants' motion for summary judgment suggesting Mayor Luken and Vice Mayor Reece are entitled to legislative immunity must

be denied as there exist genuine issues of material fact regarding the safeguards of legislative immunity that must be decided at trial.

## IV. PLAINTIFF'S COMPLAINT IS NOT BARRED BY RES JUDICATA AND COLLATERAL ESTOPPEL

Defendants' next contend that plaintiff's alleged 42 U.S. C. Section 1983 violations and other state law claims are barred by Res Judicata and Collateral Estoppel. Defendants' assert that the issues at bar have been *fully litigated* in the state court hearing in the criminal trespass matter of *Ohio v. Kirkland 01/CRB/17165*, Hamilton County Municipal Court, before the Honorable Judge Black because Plaintiff's counsel in the criminal matter filed a motion to dismiss. *(See Defendants' Motion For Summary Judgment, paragraph 2, p.10); (See also Copy of Plaintiff's Criminal Motion To Dismiss (Doc. 4, Exhibit B))*. Defendants' assert in that criminal motion to dismiss, "plaintiff argued he was arrested without probable cause, denied his first amendment right of free speech and equal protection." What defendants' Luken and Reece don't mention, and a careful reading of the criminal motion to dismiss reveal is, the **memorandum** section, which states the controlling law argues the criminal defendant's Kirkland's arrest by civil defendant Officer Mark Sneed was a warrantless arrest because Sneed did not personally observe the alleged conducts, which lead to the charge of criminal trespass. The two page motion exhausts most of its space dealing with case law that is clear, a warrantless arrest can be made only if the misdemeanor is committed in the presence of the arresting officer. R.C. 2935.03 (A). Plaintiff's counsel also cited State v. Reyman (1989), 55 Ohio App. 3d 222, 224, 563 N.E. 2d 749.

Plaintiff's counsel in the criminal motion to dismiss included a pro forma argument regarding criminal defendant Kirkland's constitutional rights of free speech and equal protection under the laws of the U.S. and Ohio were violated based on the actions of the Mayor to silence his speech. This perfunctory argument in know way shifted the central argument in the criminal motion to dismiss memorandum from a warrantless arrest defednse to one that included free speech associated arguments. Plaintiff respectfully reminds this honorable court in reviewing a motion for summary judgment "the judge is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 249 (1986).* Further Judge Black decision as cited by Defendants' in and of itself creates a genuine issue for trial. Judge Black stated [criminal] **"defendant Kirkland initially had a statutory and constitutional right to speak freely at the meeting."**..."defendant's remarks were merely ruled out of order...defendant, exacerbated the dispute by commiting conduct,...**when defendant refused to leave, he committed the criminal act of trespass.** *(See Transcript of the Honorable Judge Black's Decision-Pgs. 3-5); (See also Defendants' Motion For Summary Judgment(Doc.18). p. 13).* The Honorable Judge Black decision creates a genuine issue for trial. Clearly the federal action claims do not mimic the warrantless arrest defense raised by plaintiff in the criminal trespass case. As evidenced by the Judge's Transcripts plaintiff had a statutory and constituional right to free speech. *Id.(Doc. 18.* Defendants reliance on the law in *Berger v. City of Cleveland, 110 F. 3d 63, (6th Cir. 1997)* is in one instance is misplaced and in another instance has no bearing what so ever. In the latter instance, the June 27, 2001 violation of plaintiff's free speechrights involving the Vice Mayor there was no arrest. Therefore that case nor

any facts arising out of that case have ever made it to any other judicial forum other than this U.S. District Court. The first instance, the May 23, 2001 claim was a charge of criminal Trespassing based on alleged conduct, which occurred during speech. Plaintiff in this forum is seeking redress of grievances for violations of state and federal constitutional rights. Under the framework established in *Berger Id.* The state court has never entertained litigation of the claims in this instant complaint. For the same reasons Underthe framework in *Isibor v. City of Franklin Tennesse 1998 U.S. App. Lexis 1076 (6th Cir.)* defendants have actually failed to prove **the identical issues** have been (1) actuallyLitigated, having not been litigated they could not have been (2) directly determined,and certainly a misdemeanor conviction has no bearing on these claims as they are not(3) essential to the judgment handed down (in the misdemeanor case). *Buckeye Union Insurance Company v. New England Insurance Company, 720 N.E. 2d 495, (6th Cir. 1999); U.S. v. 415 East Mitchell Avenue, 149 F. 3d 472, (6th Cir. 1998). ).* Accordingly the court must view the evidence and draw all reasonable inferences in favor of the non-moving party and deny defendants motion for summary judgment. *See Matsuhita Elec. Indus. Co. v. Zenith Radio Corp., 474 U.S. 574, 587 (1986).*

### V. DEFENDANT'S ARE NOT ENTITLED TO QUALIFIED IMMUNITY

Defendants' Mayor Luken,Vice Mayor Alicia Reece, City of Cincinnati Police Officers-Sgt. Emmett Gladden & Officer Mark Sneed, City of Cincinnati Police Chief Thomas Streicher & the City of Cincinnati are less entitled to qualified immunity than they were to legislative immunity, albeit none at all. Once a defendant raises a qualified

immunity defense, the plaintiff must satisfy a two pronged analysis: (1) "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [defendant's] conduct violated a constitutional right?" and, if so (2) Was the right clearly established? *Saucier, 533 U.S. 281; see also Hinchman v. Moore, 2002 U.S. App. LEXIS 24305 (6th Cir. 12/2/02).* In the first prong Saucier analysis it has been submitted by defendants' in their reliance on the *Transcript of the Honorable Judge Black's Decision in Ohio v. Kirkland 01/CRB/17165* that plaintiff's statutory and constitutional rights were violated. In that cited transcript Judge Black states "Defendant Kirkland initially had a statutory and constitutional right to speak freely at the [City Council meeting]." *(See Transcript of the Honorable Judge Black's Decision-Pgs. 3-5); (See also Defendants' Motion For Summary Judgment(Doc.18). p. 13).* In the second prong Saucier analysis the question is was the right clearly established? Under the Ohio Revised Code there is no requirement that a City Council (a public body) provide the Public with an opportunity to comment at its City Council meetings. *See Forman v. Blaser, No. 13-87-12 (Ct. App. Seneca County August 8, 1988).* However, if a City Council (public body) chooses to provide for public participation in its meetings, such participation would generally be subject to first and fourteenth amendment protections. *See, e.g. Jones v. Heyman, 888 F. 2d 1328 (11th Cir. 1989).* (see also Opinion Attorney General 92-032 (AmplificationDevices; **Public Participation; Discussion Procedures; Time Restrictions**; Registration requirements)). Additionally under the Charter of the City of Cincinnati City Council has clearly established a constitutional right to free speech by establishing that "all meetings of the council and standing committees shall be open to the public.... *(See Rules of Council Rule 2.1); (see also testimony of Councilmember*

*John Cranley in re; Ohio v. Kirkland, Defendant's Motion for Summary Judgment (Doc. 18, pps. 6-7).* Finally whether the defendants on both occasion felt the plaintiff's comments were offensive or inflammatory does not cloak them with any qualified immunity protection. The U.S. Supreme Court has held "the First Amendment does not allow the imposition of special prohibition on those speakers who express views on disfavored subjects". *R.A.V. v. St Paul, 505 U.S. ___, 112 S. Ct. 2548 (1992).* The First Amendment as applied to the states through the Fourteenth Amendment provides that the government "shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." *See U.S. CONST. amend. I.* Additionally the application of Public Forum Doctrine is an appropriate defense to Defendants' motion for summary judgment. The Supreme Court has recognized three types of forums. The first type is a traditional public forum. A traditional public forum is a place "which by long tradition or by government fiat ha[s] been devoted to assembly and debate," such as a street or park. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983).* In traditional public forum, "the rights of the state to limit expressive activity are sharply circumscribed": the government may enforce content-based restrictions only if they are narrowly drawn to serve a compelling interest, and may enforce content-neutral time, place, and manner regulations only if they are "narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Id.* The second type of forum has been alternatively described as a "limited public forum," *see Rosenberger*, 515 U.S. at 829, and as a "designated public

forum," see *Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 679 (1998). The government may open a limited public forum "for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects." *Cornelius*, 473 U.S. at 802. Although the government need not retain the open nature of a limited public forum, "as long as it does so it is bound by the same standards as apply in a traditional public forum." *Perry*, 460 U.S. at 46. The third and final type of forum is a nonpublic forum. The government may control access to a nonpublic forum "based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Cornelius*, 473 U.S. at 806; see also *Perry*, 460 U.S. at 46. Clearly the City of Cincinnati Council meetings a are a limited public forum subject to all the associated protections. On the afternoons in question Plaintiff, William Kirkland, complied with the customary procedure to be recognized to speak on a non-agenda item. *(See Complaint Paragraph 17); (See also Affidavit of William Kirkland).* It is true that "a speaker must seek access to public property or to private property dedicated to public use to evoke First Amendment concerns." See *Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.*, 473 U.S. 788, 801 (1985).

**VI. MALICIOUS PROSECUTION**
Finally the court does not have to reach the question of defendants' motion for summary judgment with respect to plaintiff's malicious prosecution because plaintiff has successfully raised genuine issues of material fact regarding the lack of legislative and qualified immunity protections to be afforded defendants, as well as the collateral estoppel and res judicata defenses raised by plaintiff. More specifically the federal and

pendant state claims before this honorable court involve issues of speech and conduct sufficient to raise genuine issues of material fact.

### EXTENSION OF TIME TO SUPPLEMENT THE RECORD

Plaintiff respectfully request an additional time of seven (7) days up to and including Friday January 30, 2004 in which to supplement the record with documents and evidence requested from the State Court i.e. Copy of the Video Recording from May 23, ]2001, copy of the speaker's card identifying subject matter, copy of the relevant Cincinnati City Council Rules of Council, and a copy of the City of Cincinnati cassette recording for June 27, 2001. In addition plaintiff is in the process of obtaining two (2) relevant affidavits, which are significant to demonstrating genuine issues of material fact.

These items in support of plaintiff's opposition to defendants' motion for summary judgment bear considerably weight and a January 30th, 2004 filing will not cause prejudice to defendants.

### PLAINTIF'S SECOND REQUEST TO UNSEAL CRIMINAL TRANSCRIPTS

Plaintiff, pro se, respectfully request of the Court a second time to unseal the criminal trial transcripts filed with the Defendants motion for summary judgment. If these public documents are to be used by the Court in support of Defendant's motion then the plaintiff, pro se ought to have access to them. The defendants' have not sought a protective order however they have the unjust, defacto benefit of one.

### CONCLUSION

For the above stated reasons, the plaintiff respectfully request this honorable court not to weigh the evidence and determine the truth of the matter but to determine there is a genuine issue for trial and defendants are not entitled to summary judgment as a matter of law.

Respectfully Submitted:
/s/ *[signature]*
WILLIAM KIRKLAND
1335 Compton Road #6
Cincinnati, Ohio 45231

## Certificate of Service

I hereby certify that a copy of the forgoing document Plaintiff's Opposition To Defendants' Motion For Summary Judgment was hand delivered or sent by regular U.S. mail to Attorney of record Thomas J. Harris, Esq. at 801 Plum Street, Cincinnati, Ohio 45202 this 20th day of January 2004.

Respectfully Submitted:
/s/ *[signature]*
WILLIAM KIRKLAND
1335 Compton Road
Cincinnati, Ohio 45231
513.921.4472 (h)
E-mail: thehonorablewilliamkirkland@hotmail.com