UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

WILLIAM KIRKLAND,

       Plaintiff,

                                          Civil Action No. C-1-02-0364

  vs.

CHARLIE LUKEN, et al.,

       Defendants.

                                      Weber, J.
                                      Perelman, M.J.

## REPORT AND RECOMMENDATION[1] THAT: (1) DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. 18) BE GRANTED; (2) JUDGMENT BE ENTERED IN FAVOR OF DEFENDANTS ; AND (3) THIS CASE BE TERMINATED UPON THE DOCKET

This pro se action by plaintiff, William Kirkland, against the Mayor and Vice Mayor of Cincinnati, Charles Luken[2] and Alicia Reece, the Cincinnati Chief of Police, Thomas Streicher, and two Cincinnati Police officers, Emmett Gladden and Mark E. Sneed arises from plaintiff's conduct at and removal from two public meetings of the Cincinnati City Council.

On May 23, 2001, plaintiff attended a city council meeting, completed a speakers card, and was called to the podium by Mayor Luken, the presiding officer, to speak on a

---

[1]    Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2]    In the Complaint and throughout his pleadings plaintiff incorrectly and improperly refers to the Mayor as Charlie.  The Court condemns such impropriety, and wonders whether plaintiff would care to be referred to by the defendants as Bill or Willie.

non-agenda item.  *Id.* at ¶ 9, 17-18.  While at the podium plaintiff stated: "you sure you wants me to speaks Mr. Charlie? [A]ll these blacks mans coming up here talking likes we's free, talking bouts boycottin A Taste of Cincinnati, this ain't Cincinnati this is 'Nigganati'." (Doc. 30, Kirkland Affidavit ("Kirkland Aff."), ¶ 11).  Plaintiff was immediately admonished by Mayor Luken, and ruled out of order.  (Doc. 1, ¶ 20).  He then stepped away from the podium and approached the Mayor while shouting loudly, as a result of which he was removed from the meeting by Sergeant Gladden.  *Id.* at ¶ 23-26. Plaintiff was then arrested by Officer Sneed and charged with criminal trespass in violation of O.R.C. 29112.21.[3]  *Id.* at ¶ 27.

Plaintiff alleges that prior to his taking the speakers podium another citizen, a white male, also addressed the council during the non-agenda items portion of the meeting and approached the Mayor continuing to talk after his two-minute time limit expired, but he was not silenced, removed, or arrested.   (Doc. 1, ¶ 9).

On June 27, 2001, plaintiff spoke at another public session of the city council.  *Id.* at 29.  While addressing Ms. Reece, he stated: "if you're not a clown stop acting like one" and told her to "stop pandering to white people."  *Id.* at 30.  According to plaintiff, Ms. Reece "seduced Mayor Charlie Luken to join . . . [Ms.] Reece into silencing plaintiff. . . ." at that hearing.  *Id*. at ¶ 31.

On May 23, 2002, plaintiff, pro se*,* initiated this action pursuant to 42 U.S.C.§ 1981,

---

[3]  Plaintiff was ultimately tried and convicted of that offense.

42 U.S.C.§ 1983, and 42 U.S.C.§ 1985 for alleged violations of rights secured by the United States Constitution, also asserting claims under state law.  (Doc. 1).

The action is now before this Court on defendants' motion for summary judgment (Doc. 18) and plaintiff's memorandum in opposition thereto.  (Doc. 30).

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue of material fact, and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under governing substantive law, might affect the outcome of the action.  *Celotex*, 477 U.S. at 323.

While all facts and inferences must be construed in a light most favorable to the party opposing the motion,  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986), that party "may not rest upon the mere allegations or denials of his pleading, but . . .  must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 248, 106 S. Ct. 2505 (1986).

With respect to plaintiff's § 1983 claims, defendants Luken and Reece maintain that they are entitled to legislative immunity, or in the alternative, qualified immunity.  Whether the Mayor and Vice Mayor are entitled to absolute immunity turns upon the question of whether their conduct constituted legislative or administrative duties.  If the former, then their immunity is absolute.  *Bogan v. Scott-Harris,* 523 U.S. 44, 49, 118 S.Ct. 966, 140

-3-

L.Ed.2d 79 (1998). If the latter, then only qualified immunity is afforded. *Haskell v. Washington Tp.*, 864 F.2d 1266, 1278 (6th Cir. 1988).

While other circuits have addressed the issue and have found that monitoring and/or disciplining of the conduct of speakers at a public hearing constitutes an administrative act, *See Kamplain v. Curry County Bd. Of Comm'sr*, 159 F.3d 1248 (10th Cir. 1998) and *Hanson v. Bennett*, 948 F.2d 397 (7th Cir. 1991), the question has not been ruled upon by the Sixth Circuit. This Court does not believe that it is necessary to do so in this action, as this Court believes that it is unquestionably clear that these two defendant's are protected, at the least, by qualified immunity.

Generally, government officials, "performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Black v. Parke*, 4 F.3d 442, 444 (6th Cir. 1993), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity not only insulates government officials from individual liability for money damages, but from the burdens and expenses of litigation and trial. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 2156 (2001).

Qualified immunity involves a three- step inquiry. *Feathers v. Aey* 319 F.3d 843, 848 (6th Cir. 2003). First, a Court must determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiff show that a constitutional violation has occurred. *Id.* If so, the Court next considers whether the violation involved a

clearly established constitutional right of which a reasonable person would have known. *Id.* Third, if the first two conditions are met, the Court determines whether the plaintiff has offered sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Id. citing Williams v. Mehra,* 186 F.3d 685, 691 (6th Cir.1999) (en banc) (*citing Dickerson v. McClellan,* 101 F.3d 1151, 1158 (6th Cir.1996)); *see also Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

Plaintiff maintains that he has a clearly established constitutional right to free speech, which was violated at each of the council meetings.

While it is undeniable that the First Amendment envisions the "uninhibited, robust, and wide-open" debate of public issues, it is also beyond doubt that the freedom of speech is not absolute. *Frisby v. Schultz,* 487 U.S. 474, 479, 108 S.Ct. 2495, 2499-2500, 101 L.Ed.2d 420 (1988) (citations omitted). Even protected speech may be restricted by reasonable time, place and manner regulations. *Ward v. Rock Against Racism,* 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) (*citing Clark v. Community for Creative Non-Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 3068-69, 82 L.Ed.2d 221 (1984)). Where speech is curtailed in accordance with one such reasonable restriction no constitutional violation occurs. *Wysinger v. City of Benton Harbor,* 968 F.Supp. 349, 354 (W.D.Mich. 1997); *See also Jones v. Heyman,* 888 F.2d 1328, 1332 (11th Cir.1989) (finding that if [defendant] was enforcing an appropriately limited time, place, and manner restriction, then

he did not violate clearly established rights, and is immune).

Here, Mayor Luken, acting as the chair of the meeting, was charged with the duty to "preserve order and decorum, prevent attacks on personalities or impugning of member's motives and confine members in debate to the questions under discussion." Rule 5.3, City of Cincinnati Rules of Council. Furthermore, Rule 2.6 of the City of Cincinnati Rules of Council provides:

> The use of profane language, personal attacks, slander, defamation, physical violence or threat thereof, which the chair determines is intended as a disruption, shall constitute a disturbance of the citizens' forum.
>
> The chair may order the removal of any person causing a disturbance of a citizens' forum or failing to comply with any lawful decision or order by the chair for the duration of the of the citizens' forum or such lessor period as the chair may determine.

Thus, it is beyond question that when plaintiff was removed from each council meeting Mayor Luken was enforcing an appropriate time, place, and manner restriction, and in doing so did not violate plaintiff's clearly established constitutional right of free speech. Accordingly, this Court concludes that defendants Luken and Reece are entitled to qualified immunity with respect to plaintiff's § 1983 claim.[4]

While this makes it unnecessary to address defendants' argument that plaintiff's 1983 claims are barred by the doctrines of res judicata and collateral estoppel, this Court

---

[4] Plaintiff does not identify the individual defendants in relation to each claim, but simply refers to "defendants" generally throughout the allegations in the complaint. Because plaintiff fails to establish a violation of his clearly established constitutional rights, it follows that the other defendants are also entitled to qualified immunity.

will do so and finds that argument unavailing.

At his criminal trial, plaintiff filed a motion dismiss arguing, among other things, that his First Amendment rights were violated.  The denial of the motion is the basis of defendant position in this regard.  This Court finds that plaintiff's First Amendment issue was not "actually litigated" at the criminal trial so as to invoke the doctrines of res judicata or collateral estoppel regarding his federal § 1983 claim.  Moreover, "[i]t is clear that the difference in the relative burdens of proof in the criminal and civil actions precludes the application of the doctrine of collateral estoppel." *Dowling v. U.S.*, 493 U.S. 342, 349, 110 S.Ct. 668, 673 (1990).

Plaintiff's section 1985 and section 1981 claims also fail.

To make out a claim under 42 U.S.C. § 1985 plaintiff must show that two or more persons conspired to deprive him of his civil rights because of race.  *Griffen v. Breckenridge,* 403 U.S. 88, 102-103 (1971).  This statute requires that plaintiff show that defendants acted to deprive him of his rights with "discriminatory racial animus." *Id.* at 102.

Plaintiff has failed to provide any evidence that would establish that any of the defendants acted with discriminatory racial animus, his allegations in the complaint are not sufficient to withstand defendants' motion for summary judgment.

Similarly, plaintiff has failed to provide any evidence of discrimination in support of his 1981 claim.

Pursuant to 42 U.S.C.A. § 1981, "[a]ll persons within the jurisdiction of the United

-7-

States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." Again, plaintiff's allegations, without more, are insufficient to withstand a motion for summary judgment with respect to this claim.

Finally, it is not necessary to address the merits of plaintiff's state law claims. Under 28 U.S.C. § 1367(c)(3), the district court has the discretion to dismiss claims over which it has supplemental jurisdiction when it has dismissed all claims over which it has original jurisdiction. *Dobbs-Weinstein v. Vanderbilt Univ.,* 185 F.3d 542, 546 (6th Cir. 1999), *cert. denied,* 529 U.S. 1019 (2000). The Sixth Circuit has recognized a general rule disfavoring a district court's exercise of supplemental (then referred to as pendent) jurisdiction when federal question claims are dismissed before trial. *See Gaff v. Federal Deposit Ins. Corp.,* 814 F.2d 311, 319 (6th Cir. 1987) (*citing United Mine Workers v. Gibbs,* 383 U.S. 715 (1966)); *see also Wolotsky v. Huhn,* 960 F.2d 1331, 1338 (6th Cir. 1992) ("Where a district court exercises jurisdiction over state law claims solely by virtue of pendent jurisdiction and the federal claims are dismissed prior to trial, the state law claims should ordinarily be dismissed without reaching their merits.").

Accordingly, in light of the recommendation that plaintiff's federal claims should be dismissed, it is further recommended that plaintiff's state law claims should be dismissed

-8-

without prejudice.

This Court, therefore, **RECOMMENDS** that: (1) defendants' summary judgment motion be **GRANTED;** (2) judgment be entered in defendants favor; and (3) this case be **TERMINATED UPON THE DOCKET.**


     s/ David S. Perelman
David S. Perelman
United States Magistrate Judge

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION


WILLIAM KIRKLAND,

        Plaintiff,

                                          Civil Action No. C-1-02-0364

  vs.


CHARLIE LUKEN, et al.,

        Defendants.

                                       Weber, J.

                                       Perelman, M.J.


## NOTICE


Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **TEN (10) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **TEN (10) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).