**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **WILLIAM KIRKLAND** | **Case No.** C-1-02-364 |
| C/o Christi Hendley | **Judge** Weber |
| 2720 Price Ave. | **Magistrate** Perleman |
| Cincinnati, Ohio 45204 | |
| **Plaintiff,** | |

V.

**MAYOR CHARLIE LUKEN, et al.,**
        **Defendants,**

**PLAINTIFF'S OBJECTIONS TO**
**MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATIONS**
**AND**
**MOTION FOR EVIDENTIARY HEARING**

Now Comes the Plaintiff, William Kirkland, pro se, pursuant to Fed. R. Civ. 72(b)

respectfully submitting to this honorable Court his objections to the Magistrate

Judge's Report and Recommendations.

**MEMORANDUM IN SUPPORT**

**I. STATEMENT OF CASE**

This honorable Court has issued a Report and Recommendation ("R&R") signed

by Magistrate Judge David Perelman, that defendant's motion for summary

judgment be granted (Doc. 18). In issuing the "R&R" the Magistrate Judge stated

> "it is beyond question that when plaintiff was removed from
> each council meeting, Mayor Luken was enforcing an appro-
> priate time, place, and manner restriction, and in doing so did
> not violate plaintiff's clearly established constitutional
> right of free speech. Accordingly, this Court concludes that
> defendants Luken and Reece are entitled to qualified
> immunity with respect to plaintiff's section 1983 claim.

1

## II. STATEMENT OF FACTS

For the convenience of the Court, Plaintiff restates the facts in this case as they

appeared in Plaintiff's Complaint (Doc. 1), and Plaintiff's Opposition To

Defendant's Motion For Summary Judgment (Doc.30); to wit:

On May 23,2001, Plaintiff, William Kirkland along with several known and

unknown citizens attended a regular weekly scheduled, public session of the

Cincinnati City Council Meeting. *(Plaintiff's Complaint paragraph 9).*

One citizen, unknown to plaintiff at the time was Robert J. Meyers, a White male,

who addressed council during the non-agenda items portion of the City Council

Meeting. *(Plaintiff's Complaint Paragraph 10).*

During Mr. Robert J. Meyers address he left the podium with out the prior

approval of the Mayor who was chairing the meeting. *(Plaintiff's Complaint*

*Paragraph 11).*

Mr. Robert J. Meyers approached the Mayor and each member of Council to

present them with documents while he continued speaking. *(Plaintiff's Complaint*

*Paragraph 12).*

When citizens raised verbal objections to the Mayor allowing the "white"citizen

to approach without permission Mayor Charlie Luken apologized to Mr. Robert J.

Meyers about the citizens outburst and told Mr. Robert J. Meyers to continue.

*(Complaint Paragraph 13).*

Mr. Robert J. Meyers finished passing out documents and returned to the podium

where he went over the allotted two-minute time limit. *(Complaint Paragraph*

*14).*

Mayor Charlie Luken warned Mr. Robert J. Meyers that he had exceeded the two

minute time limit, however Mr. Meyers continued to speak. (*Complaint Paragraph 15*).

Mr. Robert J. Meyers continued to speak without being silenced, removed from council chambers, or being unlawfully arrested. (*Complaint Paragraph 16*).

On the afternoon in question Plaintiff, William Kirkland, complied with the customary procedure to be recognized to speak on a non-agenda item. *(Complaint Paragraph 17)*.

Plaintiff, William Kirkland was called to the podium by Mayor Charlie Luken. *(Complaint Paragraph 18)*.

As plaintiff, William Kirkland began to speak, plaintiff referred to the city of Cincinnati as "nigganati". *(Complaint Paragraph 19)*.

Plaintiff, William Kirkland was immediately admonished by the Mayor Charlie Luken . *(Complaint Paragraph 20)*.

Mayor Charlie Luken ordered Sgt. Emmett Gladden to "remove Mr. Kirkland". *(Complaint Paragraph 21)*.

Sgt. Emmett Gladden approached plaintiff, William Kirkland at the podium and turned off the microphone.*(Complaint Paragraph 22)*.

Plaintiff, William Kirkland stepped away from the podium and walked toward the Mayor's chair which was on top of a raised platform, inaccessible to the public. *(Complaint Paragraph 23)*.

Plaintiff, William Kirkland was speaking without the benefit of a microphone and speaking loudly. *(Complaint Paragraph 24)*.

Mayor Charlie Luken continued to order Sgt. Gladden to "remove Mr. Kirkland". *(Complaint Paragraph 25)*.

Prior to the exhaustion of Plaintiff, William Kirkland's two minute time limit Sgt.

Gladden executed Mayor Charlie Lukens's command to "removeMr. Kirkland".

*(Complaint Paragraph 26).*

Plaintiff ,William Kirkland having been silenced by Mayor Charlie Luken,removed

from the Council Chambers by Sgt. Emmett  Gladden, was ultimately arrested by

Police officer Mark Sneed. *(Complaint Paragraph 27).*

All of these actions took place with the approval and under the watchful eye of

City Prosecutor Terry Cosgrove, violating plaintiff, William Kirkland's

Constitutional and Civil Rights. *(Complaint Paragraph 28).*

On June 27, 2001 Plaintiff, William Kirkland was speaking before regular

scheduled public session of the Cincinnati City Council Meeting     when plaintiff

William Kirkland stated to Councilwoman Alicia Reece "if you're not a clown stop

acting like one". *(Complaint Paragraph 29).*

Plaintiff, William Kirkland further instructed Councilwoman Alicia Reece to "stop

pandering to white people". *(Compliant Paragraph 30).*

At that time Councilwoman Alicia Reece seduced Mayor Charlie Luken to join

Councilwoman Alicia Reece in silencing plaintiff, William Kirkland,

violating plaintiff's William Kirkland's Constitutional and Civil Rights.

*(Complaint  Paragraph 31).*

### III. SPECIFIED OBJECTIONS TO R&R

1.   Plaintiff objects that this complaint arises from his *conduct* at and removal

from two public meetings of the Cincinnati City Council. (R&R paragraph1,

pg.1).

2.   Plaintiff objects to the Honorable Magistrate Judge admonishing plaintiff for

Referring to Mayor Luken as "Charlie". (R&R footnote 2, pg.1).

3.  Plaintiff objects he was removed from City Council by Sgt. Gladden for stepping away from the podium and approaching the Mayor while shouting loudly. (R&R paragraph 1, pg.2).

4.  Plaintiff objects that it is unquestionably clear that defendant's Mayor Luken and Vice mayor Reece are protected, at least, by qualified immunity. (R&R paragraph 1, pg.4). and that when he was removed from each council meeting Mayor Luken was enforcing an appropriate time, place, and manner restriction. (R&R paragraph 3, pg.6).

5.  Plaintiff objects to this Honorable  Court sua sponte introducing Cincinnati City Council Rule 2.6. (R&R paragraph1, pg.6).


6.  Plaintiff objects that defendants Luken and Reece, or the other defendants are entitled to qualified immunity. (R&R paragraph 3, and 4, footnote 4, pg.6).

### III. LAW AND ARGUMENT

#### A.  Summary Judgment Standard

According to Fed. R. Civ. P. 56(c) summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *See Matsuhita Elec. Indus. Co. v. Zenith Radio Corp., 474 U.S. 574, 587 (1986)*. The judge is not to weigh the evidence and determine the truth of the matter but to determine

whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 249 (1986).*

## IV. FIRST OBJECTION TO R&R

1. **Plaintiff Objects That This Complaint Arises From His *Conduct* At And Removal From Two Public Meetings Of The Cincinnati City Council.**

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *See Matsuhita Elec. Indus. Co. v. Zenith Radio Corp., 474 U.S. 574, 587 (1986).* In viewing the evidence and drawing all reasonable inferences in favor of the non moving party (plaintiff), it is undisputed this case is more about free speech and than expressive conduct. See (Doc. 1, paragraphs 9,17-21, 29). See also (Doc. 30, Kirkland Affidavit (Kirkland Aff.") paragraphs 10, 11). The Court concedes as much in stating "…Mayor Luken was enforcing an appropriate time, place, and manner restriction, and in doing so **did not violate plaintiff's clearly established constitutional rights of free speech.** (R&R paragraph 3, pg. 6)

> *"10. On May 23, 2001 I, William Kirkland, complied with the customary procedure to be recognized to speak on a non-agenda item completing a speakers card and notating on the card his subject matter would be the "N"-Nati Ed. Campaign." (Doc. 30, Kirkland Affidavit paragraph 10)*

> *" 11. I was called to the podium by Mayor Luken. As I began to speak, I asked the Mayor with a drawl "you sure you wants me to speaks Mr. Charlie?" "all these blacks mans coming up here talking likes we's free, talking bouts boycottin A Taste of Cincinnati, this an't Cincinnati this is "Nigganati". " (Doc. 30, Kirkland Affidavit paragraph 11).*

2. **Plaintiff Objects To The Honorable Magistrate Judge Admonishing Plaintiff For Referring To Mayor Luken As "Charlie". (R&R footnote 2, pg.1).**

6

Plaintiff would respectfully remind this Court this case is about free speech and citizens right to petition their government for redress of grievance(s). Plaintiff was speaking before city council on a matter of heated public concern, i.e. highlighting the anniversary the Chief of Police referring to a subordinate officer as a "nigger" allegedly during a training exercise for which many citizens felt the Chief was never disciplined. See (Background Doc. 30., Plaintiff's Opposition To Defendant's Motion For Summary Judgment). This was a matter of public concern and plaintiff used this opportunity before council and only this opportune ity to refer to the Mayor as "Mr. Charlie" in reference to the historical racial overtones that the term "Mr.. Charlie" implies. The implication in calling Mayor Luken "Mr. Charlie" and Cincinnati, "Nigganati" was a political "training" exercise. To demonstrate to the Mayor and the City Council that no matter how you cloak racial epithets they are still racial and they are insensitive. Nowhere else in the plaintiff's pleadings will the Court find any reference to Mayor Luken as "Charlie" other than in that protected context on May23, 2001. A careful review of the plaintiff's pleadings, briefs, or any associated documents will reveal in each and every document the plaintiff refers respectfully to each and every defendant by their title. Charlie Luken is always refereed to as Mayor Charlie Luken, Alicia Reece is always referred to as Vice mayor Alicia Reece, Emmette Gladden is always refereed to as Sgt. Gladden, etc. The plaintiff to the time to point this out because this case is about free speech and if the Honorable Magistrate took issue with my characterizations perhaps the scales of justice could be unduly biased at the outset. The judge is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue

for trial. *Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 249 (1986).*

Citizens are not required to give publicly elected officials the same mandatory

respect that would be afforded a Judge or the Court. In addition plaintiff himself

was an official candidate for Cincinnati City Council.

3.  **Plaintiff objects he was removed from City Council by Sgt. Gladden for stepping away from the podium and approaching the Mayor while shouting loudly. (R&R paragraph 1, pg.2).**

Having demonstrated this case is about free speech it is clear on both occasions

plaintiff was removed as a result of Mayor Luken and Vice Mayor Reece

violating plainitff's constitutional rights and Sgt. Gladden complying with their

unlawful orders to remove plaintiff on both occasions. See (Doc. 30, Kirkland
Affidavit, 11,12,16, 17, 25

> **11.** *I was called to the podium by Mayor Luken. As I began to speak, I asked the Mayor with a drawl "you sure you wants me to speaks Mr. Charlie?" "all these blacks mans coming up here talking likes we's free, talking bouts boycottin A Taste of Cincinnati, this an't Cincinnati this is "Nigganati".* (Doc. 30, Kirkland Affidavit, 11).

> *12. I was admonished by the Mayor as he ordered Sgt.Gladden to "remove Mr. Kirkland". (Doc. 30, Kirkland Affidavit, 12,).*

> *16. Prior to the exhaustion of my two minute for speaking Mayor Charlie Luken continued to order Sgt. Gladden to "remove Mr. Kirkland". (Doc. 30, Kirkland Affidavit, 16).*

> *17. Prior to the end of the two-minute time limit Sgt. Gladden executed Mayor Charlie Lukens's command to "remove Mr. Kirkland". (Doc. 30, Kirkland Affidavit, 17,).*

> *25. While at the podium with the permission of the chair, Mayor Luken, I began to speak. I said "if you're not a clown stop acting like one", and " stop pandering to white people" at which time I observed the Vice Mayor go off on an agitated, delirious, unprofessional tirade against me. I personally observed Mayor Luken and Vice Mayor Alicia Reece simultaneously violate*

*my free speech rights and silence me from continuing my speech.* (Doc. 30, Kirkland Affidavit, 25).

4.  **Plaintiff objects that it is unquestionably clear that defendant's Mayor Luken and Vice Mayor Reece are protected, at least, by qualified immunity. (R&R paragraph 1, pg.4).**

    **The Court should Not Grant Defendant's Motion For Summary Judgment Because the Mayor on Either Occasion Was Not Enforcing An Appropriate Time, Place, and Manner Restriction and Did Therefore Violate Plaintiff's Clearly Established Constitutional Right To Free Speech.**

Generally, government officials, "performing discretionary functions are shielded from liability for civil damages in so far as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known" *Black v. Parke, 4 F.3d 442, 444 (6th Cir. 1993), quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).*

The Court has properly stated, qualified immunity involves a three-step inquiry. *Feathers v. Aey 319 F. 3d 843, 848 (6th Cir. 2003),* but has come to an improper conclusion in the instant matter regarding reasonable time, place and manner regulations.

First a Court must determine whether, based upon applicable law, the facts viewed in the light most favorable to the plaintiff show that a constitutional violation has occurred.

A. Based Upon Applicable Law, The Facts Viewed In The Light Most FavorableTo Plaintiff Show That A constitutional Violation Has Occurred.

Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known.

B.  Speaking Before City Council On Non Agenda Items Is A Clearly Established Right Of Which Reasonable Person Would Have Known.

Under the Ohio Revised Code there is no requirement that a City Council (a public body) provide the Public with an opportunity to comment at its City Council meetings. *See Forman v. Blaser, No. 13-87-12 (Ct. App. Seneca County August 8, 1988).* However, if a City Council (public body) chooses to provide for public

9

participation in its meetings, such participation would generally be subject to first and fourteenth amendment protections. *See, e.g. Jones v. Heyman, 888 F. 2d 1328 (11th Cir. 1989).* (see also Opinion Attorney General 92-032 (AmplificationDevices; *Public Participation; Discussion Procedures; Time Restrictions*; Registration requirements)). In addition"Under the authority of the Charter of the City of Cincinnati, city Council had established, and adopted the *RULES OF COUNCIL which* buttress plaintiff's position. Rule 1.4 Rule regarding *courtesy and decorum* states " Council recognizes that citizens coming before council may not always agree with the views of some or all of the members of council nonetheless those views should be heard respectfully without reproach or admonition. Decorum and civility shall be observed at all times by members of council even though it may not be reciprocated. . (Doc. 30, Plaintiff's Opposition To Defendant's Motion For Summary Judgment, paragraph 2, pg. 8).

Third, we determine whether the plaintiff has offered sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra,* 186 F.3d 685, 691 (6th Cir. 1999) (en banc) (citing *Dickerson v. McClellan,* 101 F.3d 1151, 1158 (6th Cir. 1996)); *see also Saucier v. Katz,* 533 U.S. 194 (2001). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Russo v. City of Cincinnati,* 953 F.2d 1036, 1042 (6th Cir. 1992) (quoting *Anderson v. Creighton,* 483 U.S. 635, 639 (1987)). "Although it need not be the case that 'the very action in question has been previously held unlawful, . . . in the light of pre-existing law the unlawfulness must be apparent.'" *Id.* (quoting *Anderson,* 483 U.S. at 640). As the Supreme Court noted in *Hope v. Pelzer.* __ U.S. __, 122 S. Ct. 2508, 2516-17 (2002), an action's unlawfulness can be apparent from direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs. Defendant's have conceded

C.  Plaintiif Has Offered Sufficient Evidence To Indicate That What The Mayor And All Other Offcials Did Was Objectively Unreasonable In Light Of Clearly Established Constituitonal Rights

Plaintiff has submitted evidenced that Mayor Luken and Vice Mayor Reece have conceded they have a duty to follow the laws of the State of Ohio and the United States of America. See (Doc. 12, Answer of Defendant's, paragraph 4, and 5).

D.  Mayo Luken And Vice Mayor Reece Were Not Enforcing An Appropriate Reasonable, Time, Place, and Manner Restriction Because The Non Agenda Portion Of City Council Is The Alternative Avenue For Speakers And Rules Of Council Cited By The Honorable Magistrate

The First Amendment envisions the "uninhibited, robust, and wide-open" debate

of public issues, it is also beyond doubt that the freedom of speech is not absolute.

*Frisby v.chultz, 487 U.S. 474, 479, 108 S.Ct. 2495, 2499-2500, 101 L.Ed. 2d. 420(1988)(citations omitted).* Categories of communication and speech which are not absolutely protected by First Amendment include libelous speech, fighting words, incitement to riot, obscenity, and child pornography. U.S.C.A. Const. Amend. 1. Even protected speech may be restricted by an appropriate reasonable time, place and manner regulations. . *Ward v. Rock Against Racism, 491 U.S. 781, 109 S.Ct. 2746, 105 L. Ed. 2d 661 (1989)(Citing Clark v. Community for Creative Non Violence, 468 U.S. 288, 293, 104 S. Ct. 3065, 3068-69, 82 L. Ed. 2d 221 (1984))* However reasonable time, place and manner restrictions must be content-neutral and leave open ample channels of communication through other channels. *See Jones v. Heyman 888 F. 2d 1328,1331 (11th Cir. 1989).*It is undisputed that plaintiff was speaking at City Council on a non agenda item during the speakers' portion of the council meeting. *(R&R paragraph 2, page 1).* A non agenda item is distinguished from agenda items as citizens when speaking agenda items are restricted to the subject matter of the agenda item. Non agenda items allows citizens to speak on any matter they so choose. See Jones v. Heyman 888 F. 2d 1328 (11th Cir.1989)

It is undisputed that upon using the objectionable term "nigganati" Mayor Luken *immediately admonished* plaintiff. *(R&R paragraph 1, page 2).* It is undisputed and defendants' have not refuted plaintiff's argument that after plaintiff spoke a Mr. Thomas stated he agreed with the comments of William Kirkland and cursed at the Mayor Luken calling his actions "b*llsh*t". See (Doc. 30, Kirkland Affidavit, paragraph 18, 19). Mayor Luken never ruled this citizen's comments out of order nor did he have this citizen removed from council, or arrested. See (Doc. 30, Kirkland Affidavit, paragraph 20.)

11

By silencing plaintiff Mayor Luken was essentially enforcing a content-based restriction, not an appropriate time, place and manner restriction. Whether defendants Mayor Luken or Vice mayor Reece on both occasion felt the plaintiff's comments were offensive or inflammatory does not cloak them with any qualified immunity protection. The U.S. Supreme Court has held "the First Amendment does not allow the imposition of special prohibition on those speakers who express views on disfavored subjects". *R.A.V. v. St. Paul, 505 U.S. ___, 112 S. Ct. 2548 (1992)*. Furthermore "For a State to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end... *Jones v. Heyman 888 F.2d 1328,1331 (11th Cir.1989) (citing) Airport Comm'rs of los Angeles v. Jews for Jesus, 482 U.S. 569, 573, 107 S.Ct. 2568, 2571, 96 L.Ed. 2d 500 (1987) (quoting Perry Educ. Ass'n v. Perry Local Educators Assn., 460 U.S. 37, 45, 103 S. Ct. 948, 955, 74 L.Ed. 2d 794 (1983))*. No where in defendants pleadings or documents do they allege or establish plaintiff violated any of the four prohibited categories of speech which are not protected; libelous speech, fighting words, incitement to riot, obscenity, or child pornography. U.S.C.A. Const. Amend 1. Nor do they make any reference as to what compelling state interest Mayor Luken or Vice Mayor Reece was protecting. Defendant's do cite Rule 5.3, City of Cincinnati Rules of Council. These rules as established by the Charter of the City of Cincinnati do not, plaintiff respectfully repeat, do not apply to citizens. This particular Rule, 5.3 speaks directly to "members". Plaintiff William Kirkland was not a member of council, although he was an official candidate for one of nine seats on council. Rule 5.3 as relied upon by the Honorable Magistrate reads

in pertinent part "The chair shall preserve order and decorum, prevent attacks on

personalties or impugning of members"s motives and confine members in debate

to the question under discussion" See (Doc. 18, Rules of Council, Rule 5.3).

Certainly this Honorable Court is not granting Defendant's Motion for Summary

Judgment (Doc. 18) because plaintiff referred to Mayor Luken as "Mr. Charlie"

On the contrary. Plaintiff has never argued at this point that he was ruled out of

order for referring to the Mayor as "Mr. Charlie" plaintiff has argued and it is

admitted by defendant's he was ruled out of order for saying "nigganati".

**5. Plaintiff objects to this Honorable  Court sua sponte introducing Cincinnati
City Council Rule 2.6. (R&R paragraph1, pg.6).**

The Honorable Magistrate has made reference to and relies on Rule 2.6 of the

City of Cincinnati Rules of Council to recommend that defendant's motion for

summary judgment be granted, and that this case be terminated upon the docket.

It is interesting to note this rule is not part of the Rule 5.3 rules of decorum. Even

more peculiar is the defendant has not referenced this rule 2.6 in its motion for

summary judgment, and plaintiff certainly hasn't made any reference to rule 2.6.

Rule 2.6 of the City of Cincinnati Rules of Council was not in effect on May 23,

2001 or June 2001. Rule 2.6 as relied upon by the Honorable magistrate did not

come into effect until, on or about  December 1, 2001.


**Plaintiff Motion's  This Honorable Court For An Order Striking It's Reliance On Rule
2.6, City of Cincinnati  Rules Of Council As This Rule Was Not In Effect At The Time
Of The Alleged Violations.  In Addition  Defendant's Have Not Cited This Rule In
Support Of Their Motion For Summary Judgment**

"The question of whether an offcial may nevertheless be held personally liable for an
allege by unlawful action turns on the objective legal reasonableness of the action
assessed in light of the legal rules as they existed at the time the action was taken"
*Wysinger v. City of Benton Harbor, 968 F. Supp. 349, 353 (W.D. Mich. 1997).*

 In The Alternative Plaintiff Motions For An Evidentiary Hearing And Oral Argument As To The Relevance Of Rule 2.6, And Whether It Is Unconstituionally Vague And Overbroad .

5.  Plaintiff objects that defendants Luken and Reece, or the other defendants are entitled to qualified immunity. (R&R paragraph 3, and 4, n 4, pg.6).

For the foregoing reasons Defendat Mayor Luken and Vice Mayor Reece are not entitled to qualified immunity the other defeednats should not be dismissed at this premature stage. Plaintiff can prevail at trial against all defendants and the City of Cincinnati on his constitutional claims because plaintiff has demonstrated based upon his Compalint, (Doc. 1), Plaintiff's Objection To Defendant's Motion To Dismiss. (Doc. 8), Plaintiff's Opposition To Defendant's Motion For Summary Judgment, (Doc. 30), and Plaintiff's Affidavit (Doc. 30, Kirkland Affidavit), that defendants Chief of Police Thomas Streicher, Sg.t Gladden, and Officer Sneed acted with deliberate indifference to the probable consequences of their actions in silencing plaintiff, and removing him from City Council meetings. See Pembauer v. City of Cincinnati, 475 U.S., 469, 480. See also e.g. Owen V. City of Independence, 455 U.S. 622 (1980). Chief Streicher's failure to act in any way to prevent his officers known tendency toward violating plaintiff's constitutional rights may be fairly said to represent official policy, which therefore gives rise to municipal liability under section 1983.

In addition plaintiff's state law claims should not be dismissed as all defendants acted with malicious purpose, in bad faith, and in a wanton or reckless manner. See section 2744.03(6)(b) O.R.C.

14

## CONCLUSION

For the above stated reasons, the plaintiff respectfully request this honorable court not to weigh the evidence and determine the truth of the matter but to determine there is a genuine issue for trial and defendants are not entitled to summary judgment as a matter of law.

Respectfully Submitted:
/s/
WILLIAM KIRKLAND
C/o Christie Hendley
2720 Price # 5
Cincinnati, Ohio 45204
513.307.5832

## Certficate of Service

I hereby certify that a copy of the forgoing Second Motion for Extension of Time was hand delivered to Attorney of record Thomas J. Harris, Esq. Or the City Solicitor of the city of Cincinnati at 801 Plum Street, Cincinnati, Ohio 45202 this 8th day of March 2004.

Respectfully Submitted:
/s/
WILLIAM KIRKLAND
C/o Christie Hendley
2720 Price # 5
Cincinnati, Ohio 45204
513.307.5832