UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **WILLIAM KIRKLAND** | : | Case No: C-1-02-364 |
| | : | (Judge Weber) |
| **Plaintiff,** | : | |
| | : | **MAYOR LUKEN ET AL.'S** |
| Vs. | | **RESPONSE TO PLAINTIFF'S** |
| | | **OBJECTIONS TO THE MAGISTRATE'S** |
| **CHARLIE LUKEN, ET AL** | : | **REPORT & RECOMMENDATION** |
| 801 Plum Street | | |
| Cincinnati, Ohio 45202 | : | |
| **Defendant** | : | |

Mayor Luken, et al. incorporates by reference all arguments made in support of the Motion for Summary Judgment filled herein as Document # 18.

**A. No Defendant violated a <u>clearly</u> established constitutional right.**

The Honorable Magistrate Perelman granted Mayor Charles Luken et al's., Motion for Summary Judgment stating that all Defendants were entitled to Summary Judgment on the basis of qualified immunity at a minimum. Noting that Defendants Mayor Luken and Vice Mayor Alicia Reece claimed absolute legislative immunity as there actions were claimed to be within the scope of their legislative duties, Magistrate Perelman declined to reach that question stating that the 6th Circuit Court of Appeals had not yet determined if exercising control of a City Council meeting was a legislative or an administrative act. Though not entertaining that question, Magistrate Perelman correctly ruled that Mayor

1

Luken, Vice Mayor Reece and all other named Defendants to the Complaint did not violate Plaintiff's Constitutional rights and were entitled to qualified immunity.

In *Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982),* the U.S. Supreme Court stated that "[g]overnment officials who perform discretionary functions are generally entitled to qualified immunity and are protected from civil damages so long as their conduct does not violate a clearly established statutory or constitutional right of which a reasonable person would have known." Accordingly, it is first important to determine if the individual has alleged a violation of a *clearly* established constitutional right. *Dickerson v. McClellan, 101 F.3d 1151, 1158 (6th Cir.1996).* The court thereafter must then discern whether or not a violation of this right has occurred and whether or not "the plaintiff has alleged sufficient facts supported by sufficient evidence to indicate that what the official did was objectively unreasonable in light of the clearly established constitutional rights. *Id*. A right is clearly established if "the issue has been determined by the Supreme Court or the Sixth Circuit. *Rogers .v Gooding 84 Fed. Appx. 473 (2003) (citing*, *Ohio Civil Serv. Employees Ass'n v. Seiter, 858 F.2d 1171, 1177-78 (6th Cir. 1988).* Magistrate Perelman stated in his Report & Recommendation granting Mayor Luken et al.'s, Motion for Summary Judgment, that "[w]hile other circuits have addressed the issue and have found that monitoring and/or disciplining of the conduct of speakers at a public hearing constitutes an administrative act, the question has not been ruled upon by the Sixth Circuit." *(Report & Recommendations-Pg. 4).* As neither the U.S. Supreme Court or the Sixth Circuit Court of Appeals has determined that monitoring/disciplining of conduct of speakers at a public hearing constitutes a violation of a constitutionally protected right or if the act of monitoring/disciplining of conduct of speakers at a public hearing is legislative in nature

thus affording the public official absolute legislative immunity, the right alleged to have been violated has not yet been *clearly* established. Thusly, the public officials in the case at bar are entitled to at least qualified immunity as they did not violate a *clearly* established constitutional right.

**B. No Defendant violated Plaintiff's First Amendment Rights.**

Plaintiff alleges that his First Amendment rights were violated during the City of Cincinnati Council meeting when he was addressing Council on a non-agenda item. Plaintiff was arrested by a City of Cincinnati Police Officer because of his conduct during the Council Meeting after he was ruled out of order by the presiding member of the Council Meeting-Mayor Charles Luken. *(Plaintiff's criminal trial transcript-Pgs. 40-43).* After being ruled out of order, Plaintiff quickly approached Mayor Luken speaking in a loud voice. *(Plaintiff's criminal trial transcript-Pg. 18).* As the presiding member of the City Council Meeting in question, Mayor Luken had the right to control the decorum of the proceedings. *(Plaintiff's criminal trial transcript-Pgs. 25-49). (Affidavit of Maria Rodell-Charter of the City of Cincinnati-City of Cincinnati Rules of Council, Section 5.3).*

As Magistrate Perelman properly pointed out in his Decision granting Mayor Luken et al.'s, Motion for Summary Judgment, "even protected speech may be restricted by reasonable time, place and manner regulations." *Ward v. Rock Against Racism, 491 U.S. 781 (1989) citing Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293 (1984). (Report & Recommendations-Pg. 5).* In the instant case, Mayor Luken was exercising a reasonable time, place and manner restriction pursuant to the provisions of the City of Cincinnati Charter. Specifically, Mayor Luken as the presiding member of the Council Meeting in question was granted the authority pursuant to *Rule 5.3. of the*

3

*Charter of the City of Cincinnati-City of Cincinnati Rules of Council Preservation of Order*, to properly "preserve order and decorum." *(Affidavit of Maria Rodell-Charter of the City of Cincinnati-City of Cincinnati Rules of Council, Section 5.3).* The City of Cincinnati Charter pursuant to *Rule 5.3.* further granted to Mayor Luken acting as the Chair of the Council Meeting in question, the "…final authority to take any measures reasonably necessary to preserve order during meetings and to ensure that the meeting is conducted in an orderly and efficient manner."*(Affidavit of Maria Rodell-Charter of the City of Cincinnati-City of Cincinnati Rules of Council, Section 5.3).* To be sure, this is a proper exercise of legitimate time, place and manner restrictions as addressed by Magistrate Perelman in his Report and Recommendation granting Mayor Luken et al.'s, Motion for Summary Judgment.[1]

**B. All Defendants acted reasonably.**

Magistrate Perelman concluded that it was not necessary to entertain the last prong of the qualified immunity analysis in this case because he properly concluded that none of the Defendants violated Plaintiff's constitutionally protected rights. Assuming for purposes of argument only that it was concluded that Defendants were not exercising a proper time, place and manner restriction pursuant to the applicable provisions of *Rule 5.3.* of the *Charter of the City of Cincinnati-City of Cincinnati Rules of Council Preservation of Order*, all of the Defendants would still be entitled to qualified immunity at a minimum.

---

[1] As mentioned several times in this Responsive Brief to Plaintiff's Objections to the Magistrates Report and Recommendation as well as Mayor Luken et al.'s Motion for Summary Judgment, Plaintiff was not removed from Council chambers for the content of his speech but for leaving the speakers podium while quickly approaching the Mayor yelling at him in an aggressive manner. Magistrate Perelman properly pointed out that "even protected speech may be restricted by reasonable time, place and manner regulations." *Ward v. Rock Against Racism*, 491 U.S. 781 (1989) citing *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984). (Report & Recommendations-Pg. 5).

The second prong of a qualified immunity analysis requires the Court to determine if the actions taken by the governmental official where objectively unreasonable. *McClellan, 101 F.3d at 1151, 1158.* As noted previously herein, public officials are entitled to qualified immunity if the right alleged to be breached by the official was not established at the time of the offense or if established, the actions taken by the official were reasonable. *Anderson v. Creighton, 483 U.S. 635,640 (1987), Saucier v. Katz, 533 U.S. 194, 200-201 (2001).*

The Defendant's actions on May 23, 2001 were not unreasonable. As the presiding officer of City of Cincinnati Council Meetings, Mayor Luken has the power and authority to control the decorum of the proceedings during the meeting pursuant to *Rule 5.3.* of the *Charter of the City of Cincinnati-City of Cincinnati Rules of Council Preservation of Order. (Affidavit of Maria Rodell-City of Cincinnati Rules of Council, Section 5.3).* On May 23, 2001, Mayor Luken ruled Plaintiff out of order. Thereafter, Plaintiff walked from behind the podium and quickly approached Mayor Luken speaking in a loud voice. *(Plaintiff's criminal trial transcript-Pg .18).* Plaintiff got to within three to four feet of Mayor Luken. *(Plaintiff's criminal trial transcript-Pg. 18).* Prior to reaching the Mayor, he was stopped by a City of Cincinnati Police Officer. This Officer asked Plaintiff to leave the chambers. Plaintiff indicated to the Officer that he would not leave unless he was arrested. After refusing to leave council chambers, Plaintiff was arrested by the Officer. Mayor Luken did not direct the officer to arrest Plaintiff. Mayor Luken simply ruled Plaintiff out of order in an effort to maintain control and decorum of the meeting.

It is not a violation of a constitutionally protected right for the presiding member of a city council meeting to direct and control the proceedings and decorum of the meeting. It is not unreasonable for the presiding member of the council session to admonish disruptive individuals in an effort to maintain order and control during the course of the meeting. It is no less reasonable for the Mayor of Cincinnati, to keep order during the session by admonishing individuals than it would be for a judge admonishing and or holding in contempt individuals who approach the bench or try to disrupt the proceedings of the courtroom. The Mayor of Cincinnati as would any judge trying to control the orderly proceedings of its courtroom would be acting reasonably if it instructed an individual to leave or to refrain from acting in a disorderly manner during a trial or any other court hearing where an individual approached the bench or displayed disruptive or threatening behavior.

In the instant case, it cannot be shown that Mayor Luken or any of the named Defendant's actions were unreasonable or that any of the Defendants violated a *clearly* established constitutional right afforded to Plaintiff during the City of Cincinnati Council Meeting on May 23, 2001. As such, the claims against all the Defendants should be dismissed.

**B. No specific allegations concerning Vice Mayor Alicia Reece**

Plaintiff in his Complaint does not attribute any specific action taken by Vice-Mayor Alicia Reece that violated an established constitutional right afforded to Plaintiff. In Plaintiff's Complaint concerning Vice-Mayor Reece, he states at paragraphs 29-31 the following:

> 29. On June 27, 2001, Plaintiff, William Kirkland was speaking before a regular scheduled public session

6

> of the Cincinnati City Council Meeting when Plaintiff William Kirkland stated to Councilwoman Alicia Reece, "if you're not a clown stop acting like one."
>
> 30. Plaintiff, William Kirkland further instructed Councilwoman Alicia Reece to "stop pandering to white people."
>
> 31. At that time Councilwoman Alicia Reece seduced Mayor Charlie Luken to join Councilwoman Alicia Reece in silencing Plaintiff, William Kirkland, violating Plaintiff's William Kirkland's Constitutional and Civil Rights. (*Plaintiff's Complaint, Paragraphs 29-31).*

To be sure, nothing from the above passage shows that Vice-Mayor Reece did anything to deprive Plaintiff of a Constitutional right. In fact, the Complaint does not show that Vice-Mayor Reece did anything at all to Plaintiff. The only reference to a specific act attributable to Plaintiff is the vague reference to Vice-Mayor Reece seducing Mayor Luken into silencing Plaintiff's speech. I do not know from a reading of the Complaint or from the record of this case what is meant by "seduced." I do know however, that Plaintiff points to no specific act by Vice-Mayor Reece that demonstrates a violation of his constitutional rights. For the above stated reasons, the cause of action against Vice-Mayor Reece should be dismissed as there are no allegations against Vice-Mayor Reece which establish that she violated a clearly established constitutional right afforded to Plaintiff.

**C. City of Cincinnati Police Officers—Sgt. Emmett Gladden & Officer Mark Sneed**

Plaintiff fails in his Objections to Judge Perelman's Report and Recommendations granting Mayor Luken et al.'s, Motion for Summary Judgment to specifically articulate what if any objection he has to the Courts Recommendation concerning Sgt. Gladden or Officer Sneed. He states specifically that Chief Thomas Stricher (who is not a party to this suit), Sgt. Gladden and Officer Sneed "acted with deliberate indifference to the

probable cause consequences of their actions in silencing plaintiff and removing him from City Council Meetings." *(Plaintiff's Objections to the Magistrates Report and Recommendation).* It is assumed that Plaintiff means to state that he was arrested without probable cause by Officer Sneed and Sgt. Gladden.

As mentioned earlier in this Responsive Brief, all Defendants are entitled to qualified immunity because none of the Defendants violated a *clearly* established right afforded to Plaintiff. It is also important to point out and briefly discuss that it was argued in Mayor Luken et al.'s, Motion for Summary Judgment that the Officer's had probable cause to arrest Plaintiff.

According to established law, Officers acting under the color of state law cannot arrest a person without probable cause. *Monroe v. Pape, 81 S.Ct. 473 (1961).* Probable cause has been defined as "a reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion. *United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990).* Moreover, probable cause exists if there can be determined that there was a "fair probability" at the time of the arrest that the person arrested committed an offense. *Sherwood v. Muldihill, 113 F.3d 396, (3rd Cir. 1997); Manuel v. City of Columbus,* 86 Fed. Appx. 852 (2004). This standard is established if the facts within the arresting officers knowledge would lead a reasonable officer in the same or similar situation to determine that a crime has been or is being committed by the person arrested. *Orsatti v. New Jersey State Police, 71 F.3d 482 (3rd Cir. 1995).*

On May 23, 2001 Sgt. Emmett Gladden was in attendance at the City of Cincinnati Council Meeting. During this meeting, he observed Plaintiff approach Mayor Luken in an abrupt fashion screaming in a loud voice. *(Plaintiff's criminal trial transcript-Pgs-40-*

*41).* Sgt. Gladden spoke with Plaintiff for several minutes prior to arresting him. Sgt. Gladden informed Plaintiff that he would have to leave council chambers several times. *(Plaintiff's criminal trial transcript-Pg 41).* Plaintiff was also informed that he would be arrested for criminal trespass if he did not leave council chambers. *(Plaintiff's criminal trial transcript-Pg 41).* Plaintiff indicated that he would not leave council chambers unless he was arrested. *(Plaintiff's criminal trial transcript-Pg 41).* According to O.R.C. 2911.21 (A)(3)(4), the offense of criminal trespass is defined as:

>    (A) No person, without privilege to do so, shall do any of the following:
>
>    (3) Recklessly enter or remain on the land or premises of another, as to which notice against unauthorized access or presence is given by actual communication to the offender, or in a manner prescribed by law, or by posting in a manner reasonable calculated to come to attention of potential intruders, or by fencing or other enclosure manifestly designed to restrict access.
>
>    (4) Being on land or premises of another, negligently fail or refuse to leave upon being notified to do so by the owner or occupant, or the agent or servant of either.

To be sure, Plaintiff's actions on May 23, 2001 in the City of Cincinnati Council Chambers when juxtaposed to the elements of O.R.C. 2911.21 (A)(3)(4) give rise to probable cause for an arrest pursuant to the criminal offense of criminal trespass.

According to *Muldihill, 113 F.3d at 396,* probable cause exists if there can be determined that there was a "fair probability" at the time of the arrest that the person arrested committed an offense. In the instant case, the arresting officers observed conduct which formed the basis for Plaintiff's arrest. In fact, Officer Gladden directly informed Plaintiff that he would be arrested if he did not leave council chambers. Plaintiff refused and was arrested for violating O.R.C. 2911.21 (A)(3)(4).

9

**Conclusion**

For the above stated reasons, the named Defendants in this case are entitled to summary judgment as a matter of law on all of the issues raised by Plaintiff as there are no genuine issues of material fact.

Respectfully submitted,
J. Rita McNeil
City Solicitor

**/s/ Thomas J. Harris**
Thomas J. Harris (0065946)
Assistant City Solicitor
Room 214, City Hall
Cincinnati, Ohio 45202
(513) 352-3321
Fax: (513) 352-1515
Email: tom.harris@cincinnati-oh.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing Motion has been sent by regular U.S. Mail to William Kirkland, 2720 Price Apt. #5, Cincinnati, Ohio 45204 this 22nd day of March, 2004.

**/s/ Thomas J. Harris**
Thomas J. Harris (0065946)